UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-137-TBR

LESLIE DUNCAN,                                                                                      PLAINTIFF

v.

JASON NEWBY,                                                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Motion by Defendant Jason Newby ("Defendant") to dismiss all claims against him for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The time has passed for Plaintiff Leslie Duncan ("Plaintiff") to respond. This matter is ripe for adjudication. For the following reasons, Defendant's Motion [DN 6] is **GRANTED in part and DENIED in part.**

**I. Background**

The following Background section is taken from Plaintiff's Complaint, the veracity of which is assumed for purposes of a Rule 12(b)(6) motion, as explained below. This case arises out of a criminal investigation and, later, a criminal prosecution in Christian County, Kentucky, which spanned from the 1990s into the 2010s. Plaintiff was formerly a police officer in the town of Oak Grove, which is located in Christian County. [DN 1, at 3.] In the 1990s, an establishment known as the New Life Massage Parlor was open and operating there. [*Id.*] According to Plaintiff, the massage parlor was actually a prostitution business. [*Id.*]

"In the early morning hours of September 20, 1994, Ed Carter, co-defendant in the [ensuing] criminal prosecution and part time janitor at the New Life Massage Parlor, left the parlor." [*Id.* at 4.] At around 3:00 a.m., "three of the five massage parlor employees left the

1

parlor, leaving the two remaining employees alone in the building." [*Id.*] At 3:45 a.m., those three employees returned to the building, where "they found the two remaining employees shot and stabbed in one of the massage rooms." [*Id.*] This double murder was initially tasked to the Oak Grove Police Department, where Plaintiff was the lead investigating detective. [*Id.*] Plaintiff was present at the crime scene in the wake of the murders. [*Id.*] "Shortly thereafter, the Christian County Sheriff's Department took over the investigation." [*Id.*] In 2006, the case, still unsolved, was transferred to the Kentucky State Police. [*Id.* at 5.] The case was assigned to Defendant. [*Id.*]

In November 2013, Defendant secured an indictment in Christian County against Plaintiff and two other individuals after testifying before a grand jury there. [*Id.*] These two other individuals were former Oak Grove police officer Ed Carter and a man named Frank Black. [*Id.*] Plaintiff's Complaint alleges that Defendant made "materially false statements and/or omissions…with reckless disregard for the truth" while testifying before the grand jury. [*Id.*] These statements, according to Plaintiff, include but are not limited to the following:

- Newby testified that he interviewed Tammy Papler [an owner of the massage parlor] who said it was common knowledge that Ed Carter was wanting to take over the massage parlor business. That statement is false. In addition, there was no written statement from Newby regarding an interview of Tammy Papler.
- Newby testified, 'My opinion is he went there, too. He saw the girls leave, contacted Mr. Black, said there's two left in there.' This statement is false and/or made with a reckless disregard for the truth. There was no evidence of Carter seeing girls leave the massage parlor, no evidence that Carter contacted Mr. Black, and no evidence as to what statement Carter made to Mr. Black on the fabricated phone call.
- Newby testified that Carter's then wife, Carol, made statements that when Carter got home that night he was washing clothes which she thought was very odd. Carol's interview with the [FBI] makes no mention of Carter washing clothes that night or that Carol thought that washing clothes was odd. Newby never interviewed Carol.
- Newby testified that Carter and his co-defendant Duncan had been roommates less than a year before the murders. This statement was false. Carter and Duncan had not lived together, at the latest,…over two years prior to the homicides….
- Newby testified about a completely unrelated disappearance that had occurred in Oak Grove in 1992, and testified that Carter was the canine officer assigned to that case. That

- statement is false because Carter did not even become a canine officer until…over two years later.
- Newby testified that evidence had been lost [and/or] destroyed intentionally by Plaintiff Duncan during the investigation. Detective Newby had no evidence to indicate [that] evidence had been lost during the term under which Oak Grove Police Department manned the murder investigations.

[*Id.* at 5-7.] "Plaintiff was incarcerated from November 24, 2013, through September 13, 2016, when he received a directed verdict of acquittal as to the charges" against him. [*Id.* at 7.] Plaintiff has brought claims against Defendant (1) for malicious prosecution under 42 U.S.C. § 1983 and under Kentucky common law, and (2) for violations of procedural and substantive due process under the Fourteenth Amendment to the United States Constitution. [*Id.* at 7-8.] Defendant has filed the instant Motion pursuant to Rule 12(b)(6) to dismiss all of Plaintiff's claims against him.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that the plaintiff's complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Crucially, "[w]hen considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tennessee*, 188 F.3d 687, 691 (6th Cir. 1999). This means that, "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion should be denied. *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989). "However, the Court need not accept as true legal conclusions or unwarranted factual inferences." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint

must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997).

Although a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* The concept of "plausibility" demands that a complaint contain sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 570. The element of plausibility is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, where the court is unable to "infer more than the mere possibility of misconduct, the complaint has alleged—but has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted).

In examining whether Plaintiff has stated a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court keeps in mind the following maxim: complaints filed *pro se* are "to be liberally construed," which means that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Notably though, this Court is not "willing to abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). This means that, even where a layperson proceeds *pro se*, their "complaint must contain

sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Barnett v. Luttrell*, 414 F. App'x 784, 786 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### III. Discussion

As an initial matter, the Court takes note of the fact that Plaintiff has failed to respond to the instant Motion to Dismiss. Pursuant to Local Rule 7.1, the "[f]ailure to timely respond to a motion may be grounds for granting the motion." In other words, Plaintiff's failure to respond to the Rule 12(b)(6) Motion to Dismiss by Defendant could be grounds for this Court granting Defendant's Motion. However, as Plaintiff is proceeding *pro se* and Local Rule 7.1 is permissive by nature, this Court will exercise its discretion and decide the Motion on its merits.

### A. Malicious Prosecution

Plaintiff's first claim is for malicious prosecution, under both 42 U.S.C. § 1983 and Kentucky common law. In order for a plaintiff to prevail on the claim of malicious prosecution under § 1983, he must show four things: first, "that a criminal prosecution was initiated against [him] and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)). "Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution." *Id.* (citing *Fox*, 489 F.3d at 237 and *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005)). The third element the plaintiff must prove is "that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Id.* at 308-09 (quoting *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007)). Finally, "the criminal proceeding must have been resolved in the plaintiff's favor." *Id.* at 309 (citing *Heck v. Humphrey*, 512 U.S.

477, 484 (1994)). It is not necessary that the plaintiff show malice or a specific intent on the part of the defendant to violate the plaintiff's constitutional rights. *See id.*

The requirements for a plaintiff to proceed with a malicious prosecution claim under Kentucky common law track its federal counterpart quite closely, but not precisely. As the Supreme Court of Kentucky explained in *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016), "[a] malicious prosecution action may be established" where the plaintiff shows five separate elements; these are:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;
> 2) the defendant acted without probable cause;
> 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice…
> 4) the proceeding…terminated in favor of the person against whom it was brought; and
> 5) the plaintiff suffered damages as a result of the proceeding.

*Id.* The crucial difference between an action under § 1983 and one under Kentucky common law is that the former does not require a showing of malice, while the latter does. *See id.*

Defendant presents three arguments regarding why, in his view, Plaintiff's claims for malicious prosecution fail to state a claim upon which relief can be granted, and must therefore be dismissed. First, Defendant argues that he is entitled to absolute immunity with respect to his grand jury testimony. Second, Defendant argues that he is entitled to qualified immunity stemming from his involvement in the investigation and prosecution of Plaintiff. Lastly, Defendant contends that, on the merits, Plaintiff's Complaint fails to state a claim upon which relief can be granted. The Court will address each of these arguments in turn.

As the Supreme Court has noted, "grand jury witnesses should enjoy the same immunity as witnesses as trial. This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012).

Additionally, "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.* This is because, "[w]ere it otherwise, 'a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves.'" *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 283 (1993) (Kennedy, J., concurring in part and dissenting in part)).

Defendant correctly points out that many of the allegations laid out in Plaintiff's Complaint stem from Defendant's appearance before a Christian County grand jury, during which time he testified about Plaintiff. [*See* DN 1, at 6-7.] The Supreme Court's ruling in *Rehberg* makes it plain that, insofar as Plaintiff has attempted to state a claim using Defendant's testimony from this aforementioned grand jury proceeding, these facts must be discounted. In other words, this Court now faces the task of, after setting aside Plaintiff's allegations concerning Defendant's grand jury testimony, determining whether Plaintiff has stated a claim upon which relief can be granted under Rule 12(b)(6). Defendant's point regarding the grand jury testimony is well taken and the Court will not analyze any of Defendant's testimony from the grand jury proceeding, or from his preparations for such testimony, in reaching its decision regarding the instant Motion.

Defendant's second argument relates to qualified immunity. Pursuant to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question of whether qualified immunity is

available to a defendant involves a two-step process: "[f]irst, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred." *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002). Then, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). In order for a law to be deemed as "clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bell*, 308 F.3d at 602. In other words, "the unlawfulness [of the action] must be apparent." *Id.*

As the Sixth Circuit has noted, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," because even though "an officer's 'entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point,'" this is typically done at the summary judgment phase "and not [by] dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). In the present case, Defendant contends that qualified immunity should be applied by this Court because Plaintiff has made "no specific allegations of a constitutional violation." [DN 6-1, at 6.] As noted above, the case law makes clear that the constitutional right alleged to have been violated by a defendant must have been "clearly established" at the time of said violation. *See Saucier*, 533 U.S. at 194. However, in construing Plaintiff's Complaint here, this Court keeps in mind the maxim that *pro se* pleadings must be "liberally construed," and therefore must be analyzed using less stringent standards. *Erickson*, 551 U.S. at 94.

Defendant points to Plaintiff's allegations of a "shoddy investigation" in support of the argument that "[t]here is currently no precedent within the Sixth Circuit that recognizes a constitutional violation for a negligent investigation." [DN 6-1, at 6-7.] However, Defendant's analysis misconstrues Plaintiff's Complaint. To be sure, Plaintiff utilizes the term "shoddy investigation." [*See* DN 1, at 7.] But Defendant argues that Plaintiff has accused him only of conducting a *negligent* investigation, while Plaintiff also accuses him of "acting with malice…[and taking] steps to initiate and continue the prosecution of Duncan without probable cause." [*Id.* at 8.] Plaintiff further alleges in his Complaint that Defendant "suppressed exculpatory evidence, fabricated evidence, fabricated and pressured inculpatory witness statements, failed to conduct an adequate investigation of the crime, and/or covered up impeaching evidence of his own misconduct." [*Id.*] These allegations stretch far beyond mere accusations of a negligent investigation and reach into the realm of malicious prosecution. Even setting aside the fact that, under Sixth Circuit precedent, it is usually error for a district court to hold that a defendant is entitled to qualified immunity at the Rule 12(b)(6) stage, *see Wesley*, 779 F.3d at 433-34, this Court has determined that to grant such immunity to Defendant at this time would be entirely premature.

While Defendant argues that "there are no specific allegations of a constitutional violation" made by the Plaintiff, this is not the case. [DN 6-1, at 6.] Under "Count I" of his Complaint, Plaintiff lays out his allegations of malicious prosecution, wherein he states that Defendant's "actions to deprive [him] of his liberty without probable cause were in violation of clearly established constitutional law under the Fourth and Fourteenth Amendments, and constitute…malicious prosecution…, and no law enforcement officer in 2011 or after would have believed that his actions were lawful." [DN 1, at 7.] Second, Defendant's focus on the

9

"shoddy investigation" is, for the most part, misplaced, because Plaintiff's allegation of malicious prosecution focuses in on the *effect* of what he contends was a shoddy and/or illegal investigation: a wrongful arrest not based upon probable cause. [*See id.*] Third, as the Sixth Circuit noted in *Grose v. Caruso*, 284 F. App'x 279, 283 (6th Cir. 2008), it is typically crucial for a Plaintiff to be afforded "an opportunity to initiate discovery in order to develop a factual record upon which a court may then determine whether dismissal based on qualified immunity is proper." This is because the qualified immunity question is an extremely fact-specific one, and further development is needed in this case before the Court can ascertain whether Defendant is entitled to such a defense. Due to this, Defendant's contention that he is entitled to qualified immunity must be rejected at this stage in the case.

Defendant's final argument with respect to Plaintiff's malicious prosecution claims is that, on the merits, Plaintiff simply fails to state a claim upon which relief can be granted. As noted above, a plaintiff is required to prove four separate elements in order to show malicious prosecution under § 1983. *See Sykes*, 625 F.3d at 308-09. And under Kentucky common law, a plaintiff is required to show five separate elements. *See Martin*, 507 S.W.3d at 11-12. The key difference between § 1983 and Kentucky common law is that the former does not require a showing of malice, while the latter does. *See id.* Therefore, the question becomes whether, after setting aside Defendant's testimony before the Christian County grand jury, Plaintiff has stated a claim "that is plausible on its face." *Twombly*, 550 U.S. at 570. Having construed the *pro se* Complaint liberally, as is required by Sixth Circuit precedent, the Court is satisfied that Plaintiff has met the Rule 8 standard, thereby precluding the dismissal of his malicious prosecution claims at this juncture in the litigation.

Plaintiff has satisfied his burden of pleading the first element of a § 1983 malicious prosecution claim, namely, "that a criminal prosecution was initiated against [him] and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Sykes*, 625 F.3d at 308. In his Complaint, Plaintiff alleges that he "was incarcerated from November 24, 2013, through September 13, 2016, when he received a directed verdict of acquittal as to the charges" against him. [DN 1, at 6.] Moreover, Plaintiff alleges that Defendant was in charge of the case which led to Plaintiff's arrest and subsequent incarceration, and was involved in the process whereby Plaintiff was prosecuted. [*See generally id.*] Second, Plaintiff has sufficiently pled "that there was a lack of probable cause for the criminal prosecution." *Sykes*, 625 F.3d at 308. In his Complaint, he alleges that Defendant "suppressed exculpatory evidence, fabricated evidence, fabricated and pressured inculpatory witness statements, failed to conduct and adequate investigation of the crime, and/or covered up impeaching evidence of his own misconduct," all of which leads to Plaintiff's conclusion that Defendant's "actions…deprive[d] Duncan of his liberty without probable cause…."[1] [DN 1, at 7.] Third, Plaintiff sufficiently alleges that there was a criminal proceeding, wherein he received a directed verdict of acquittal, and that, in the interim period between his arrest and acquittal, he spent roughly three years in prison. [*See id.* at 7-8.] Finally, the note that he received a directed verdict of acquittal serves to satisfy the final prong of the § 1983 inquiry, which requires that the criminal proceeding "have been resolved in the plaintiff's favor." *Sykes*, 625 F.3d at 309.

Defendant's principal argument in favor of his contention that Plaintiff has not stated a claim is that, when Defendant's grand jury testimony is stripped away, what is left are mere bare

---

[1] The Court is conscious of the fact that, most likely, this statement from Plaintiff's Complaint refers at least in part to Defendant's allegedly false and malicious grand jury testimony. However, the Court cannot say that it refers *only* to that testimony. Without considering the grand jury testimony, the Court is satisfied that the allegations of suppressing evidence, pressuring inculpatory witnesses, failing to conduct an adequate investigation, and covering up evidence refers not only to the grand jury testimony, but also generally to Defendant's investigation of Plaintiff.

bones allegations which do not satisfy the pleading standards of Rule 8. Defendant argues that he "categorically denies any such wrongdoing[s]" as laid out in Plaintiff's Complaint, which, for purposes of a Rule 12(b)(6) motion, is irrelevant to the Court's analysis. *See Lawrence*, 188 F.3d at 691 ("[w]hen considering a motion to dismiss pursuant to Rule 12(b)(6)…, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff."). However, the Court is cognizant of the fact that, as Defendant notes, "mere conclusory statements…do not suffice." [DN 6-1, at 7 (citing *Iqbal*, 556 U.S. at 678).] Crucially though, *pro se* plaintiffs are not held to the same pleading standard as those litigants represented by counsel. *See Erickson*, 551 U.S. at 94 (citing *Estelle*, 429 U.S. at 97) (explaining that a "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Thus, having kept this in mind when analyzing Plaintiff's allegations, the Court has concluded that, when construed liberally, Plaintiff has set forth more than mere bare bone, conclusory statements, and has thus met the Rule 8 standard.

With respect to Plaintiff's Kentucky common law malicious prosecution claim, the only substantive difference is that the third required element demands that the Plaintiff show "the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice." *Martin*, 507 S.W.3d at 11-12. Plaintiff alleges that Defendant, "in his individual capacity, acting with malice, took steps to initiate and continue the prosecution of Duncan without probable cause." [DN 1, at 7.] Importantly though, Plaintiff also alleges that Defendant suppressed evidence, fabricated evidence, and covered up impeaching evidence, [*id.*], which is sufficient in this Court's view to satisfy the pleading requirement for the malice element. As such, the Court will permit Plaintiff's § 1983 and Kentucky common law malicious prosecution claims to proceed.

## B. Due Process

Plaintiff's second claim is for violations of procedural and substantive due process under the Fourteenth Amendment. Specifically, Plaintiff claims that he was deprived "of liberty without due process of law and of a fair trial" by Defendant's "deliberate and intentional concealment, suppression and destruction of exculpatory and impeachment information," which Plaintiff claims "caused [him] unfair criminal proceedings, coerced plea,[2] and deprivation of liberty without due process of law during [his] lengthy incarceration…." [DN 1, at 8.] "To establish a procedural due process claim in a section 1983 action, plaintiffs must establish three elements: (1) that they have a life, liberty or property interest protected by the Due Process Clause; (2) that this interest was deprived," and finally, "(3) that the state did not afford them adequate procedures prior to depriving them of their protected interest." *Berridge v. Heiser*, 993 F. Supp. 1136, 1141-42 (S.D. Ohio 1997).

"*Brady v. Maryland* familiarly holds that prosecutors must turn over favorable evidence to the accused when the evidence is material either to guilt or punishment; wrongful withholding is a violation of the right to due process." *Robertson v. Lucas*, 753 F.3d 606, 619-20 (6th Cir. 2014) (citing *Brady v. Maryland*, 373 U.S. 83, 89 (1963)). And "[e]vidence is material when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 620 (quoting *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)). As the *Robertson* Court explained, "[t]his obligation extends to evidence that is favorable to the accused 'either because it is exculpatory, or because it is impeaching.'"

---

[2] It should be noted that, although Plaintiff references a "coerced plea," he provides no details of this plea, its circumstances, how it was coerced, what information or evidence was denied to him, nor does he actually explain which crime he pleaded guilty to. Defendant's instant Motion indicates that Plaintiff pled guilty at some point to the charge of Tampering with Physical Evidence in Christian County Circuit Court relating to the initial murder investigation. [*See* DN 6-1, at 4.] Because Plaintiff does not mention any specifics with respect to this guilty plea or argue at all how it was "coerced" or otherwise illegal, the Court will not analyze this issue.

*Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). More recently, this requirement has been extended from prosecutors to also include law enforcement officers, "[b]ecause the police are just as much an arm of the state as the prosecutor, [and] the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information." *Id.* (internal quotation marks omitted). Importantly though, where "the underlying criminal proceeding terminated in [the plaintiff's] favor, he has not been injured by the act of wrongful suppression of exculpatory evidence." *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988). In such a case, the plaintiff will be seen to have failed to state a claim, although "the wrongful suppression of exculpatory evidence may [still] be relevant to [the plaintiff's] claim of malicious prosecution." *Id.*

The Court is of the opinion that, due to the fact that the underlying criminal proceedings against Plaintiff were terminated in his favor, he has failed to state an independent claim for a violation of procedural due process relating to the alleged suppression or concealment of evidence favorable to Plaintiff. Defendant cites to a decision of a sister court in the Sixth Circuit, which this Court feels sums up this claim quite thoroughly. *See Stillwagon v. City of Delware*, 175 F. Supp. 3d 874, 900, 901 (S.D. Ohio 2016). In *Stillwagon*, the Southern District of Ohio dealt with a due process claim under facts bearing some resemblance to those of the case currently before this Court. There, a motorcyclist (Mr. Stillwagon) was the victim of extreme road rage by another motorist. The prolonged incident culminated in a confrontation between the two men, at which time Stillwagon discharged a handgun multiple times at the hood of the motorist's car in an effort to prevent it from running over him. *Id.* at 886-888. Stillwagon possessed a legal permit for the gun, and witnesses corroborated his story that the motorist initiated and persisted in confronting Stillwagon when Stillwagon only sought to get away and/or

remain safe. *Id.* Nonetheless, Stillwagon was indicted "and charged with four counts of felonious assault." *Id.* at 887. "In addition to manufacturing testimony, the Police Defendants [in the later civil action] also allegedly destroyed, failed to preserve, and failed to disclose exculpatory evidence" relating to the road rage incident. *Id.* at 888. Stillwagon was acquitted at trial. Thereafter, in the civil action, Stillwagon asserted, among other claims, a claim for the violation of his due process rights stemming from the officers' alleged failure to turn over exculpatory evidence, and for otherwise destroying or concealing such evidence. *Id.*

The district court in *Stillwagon* dismissed the Fourteenth Amendment due process claim on the pleadings, stating specifically that "if fabricating, destroying, or failing to preserve evidence constitutes a due process violation, the violation is likely remedied through a *Brady* claim. *Id.* at 900 (citing *Moldowan v. City of Warren*, 578 F.3d 351, 379-81, 391-92, 396-97 (6th Cir. 2009)). Further, "[t]he [*Stillwagon*] Court d[id] not interpret *Moldowan* as establishing new, stand-alone due process claims for fabricating evidence, destroying evidence, or failing to preserve evidence." *Id.* (citing *Moldowan*, 587 F.3d at 379-81, 391-92, 396-97). Instead, "the Court interpret[ed] *Moldowan* as a clarification from the Sixth Circuit that *Brady* claims 'reach more broadly' than some parties had assumed." *Id.* (quoting *Moldowan*, 578 F.3d at 379). As a result, the *Stillwagon* Court determined that the police department's alleged acts of fabricating, destroying and failing to preserve evidence "fall within the purview of a *Brady* claim," and Stillwagon could not "assert a *Brady* claim given that he was acquitted at [the underlying criminal] trial." *Id.* at 901.

*Stillwagon* tracks the facts of the instant case quite closely. Plaintiff's main argument in support of his claim for a violation of due process stems from Defendant's alleged suppression, fabrication, and covering up of favorable evidence in the underlying criminal trial. This Court

15

finds the *Stillwagon* Court's rule and reasoning very persuasive. As such, this Court holds that Plaintiff has failed to state a claim for a procedural due process violation under the Fourteenth Amendment due to the fact that he was acquitted in the underlying criminal action. Moreover, Plaintiff has "offer[ed] no explanation of the precise constitutional rights allegedly at issue other than to [note] that [Defendant's] actions violate the [Constitution.]" *See Berridge*, 993 F. Supp. at 1143. "Mere conclusory allegations that unspecified Fourteenth Amendment rights have been infringed will not suffice to state a claim upon which relief can be granted." *Id.* As such, Plaintiff's procedural due process claim alternatively fails as vague and conclusory.

Plaintiff has also asserted a substantive due process claim. "The substantive component of the Due Process Clause protects 'fundamental rights' that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'" *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 499 (6th Cir. 2007) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). Such fundamental rights "include 'the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion.'" *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Notably though, "[t]he Supreme Court has cautioned…that it has 'always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Id.* at 500 (quoting *Glucksberg*, 521 U.S. at 720).

Here, as in *Stillwagon*, 175 F. Supp. 3d at 901, "none of the non-*Brady* acts highlighted by [Plaintiff] implicates a recognized substantive due process right." *Id.* (citing *Bigi v. Large*, No. 3:11-cv-229, 2011 WL 6813163, at *6 (S.D. Ohio Dec. 28, 2011)). And this Court, consistent with the *Stillwagon* Court, is not "inclined to recognize a new substantive due process

right to guard against the non-*Brady* acts purportedly undertaken by the…Defendant[]." *Id.* (citing *Glucksberg*, 521 U.S. at 720). As the Sixth Circuit discussed in *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 313 (6th Cir. 2005), Plaintiff's "reliance on the Due Process Clause is misplaced…because it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area.." Additionally, "[t]he Supreme Court has stated that 'the Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the process that is due for seizures of persons or property in criminal cases, including the detention of suspects pending trial.'" *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975)); *see also Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017) (explaining that "a claim challenging pretrial detention f[alls] within the scope of the Fourth Amendment."). As such, on the merits Plaintiff has failed to state a claim under the substantive due process clause of the Fourteenth Amendment, and the Court must dismiss this claim as well.

Finally, the Court also makes note of the fact that Plaintiff largely ignores the substantive due process clause in his Complaint, and thus dismissal is warranted for vagueness and conclusory allegations as well. Stated differently, while Count II of Plaintiff's Complaint is entitled "Violations of Procedural and Substantive Due Process Under 42 U.S.C. § 1983," he provides no depth with respect to how he possessed a fundamental right, what that fundamental right was or is, or how any governmental actions taken by Defendant shock the conscience, as required under the substantive due process clause. *See Valot v. Southeast Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) (explaining that "[w]here government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate

state interest."). In short, Plaintiff provides no facts aimed at this clause, and does not elaborate in any way on this claim, and it therefore must be dismissed for this independent reason as well. In Paragraph 42 of the Complaint, Plaintiff states as follows: "Newby's acts and omissions violated Duncan's clearly established rights under the *procedural* due process component of the Fourteenth Amendment, including his right to a fair trial, and caused Duncan to suffer injuries and damages." [DN 1, at 8 (emphasis added).] Notably absent from this apparent conclusion is any reference to any substantive due process right Plaintiff allegedly possessed or which may have been violated.

### IV. Conclusion

For the reasons stated in this Memorandum Opinion, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [DN 6] is **GRANTED** as to Plaintiff's Due Process claims, and **DENIED** as to Plaintiff's Malicious Prosecution claims.

This matter is hereby scheduled for a **telephonic status conference**, to be held on **February 15, 2018 at 10:00 a.m. Central Standard Time.** Parties must call 1-877-848-7030, then give the Access Code "2523122#" and, when prompted, press "#" again to join the call.

**IT IS SO ORDERED.**

cc:  Counsel of Record

Leslie Allen Duncan, *pro se* Plaintiff

18